# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ASSURE NEUROMONITORING LOUISIANA, LLC<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>FAIRWAY MEDICAL CENTER, LLC d/b/a AVALA,<br><br>　　　　　Defendant. | Civil Action No. _____<br><br>Judge: _____<br><br>Magistrate Judge: _____<br><br>**JURY TRIAL DEMANDED** |

# **COMPLAINT**

## INTRODUCTION

Plaintiff Assure Neuromonitoring Louisiana, LLC ("Assure") brings this action seeking money damages and other relief stemming from Defendant Fairway Medical Center, LLC d/b/a Avala's ("Avala") wrongful receipt and retention of compensation for medical services provided by Assure—compensation to which Assure has the "exclusive right" under the parties' contract.

Assure provided essential intraoperative neuromonitoring ("IONM") services for surgical patients at Avala's hospital pursuant to the parties' December 1, 2018 Intraoperative Monitoring Services Agreement (the "Agreement"), which grants Assure the "exclusive right to bill and collect any fees from patients and third-party payors associated with" Assure's services. When the parties negotiated and executed the Agreement, Assure was unaware, and Avala failed to disclose, that Avala was party to a contract with the largest private health insurer in the State of Louisiana—Blue Cross Blue Shield of Louisiana ("BCBSLA")—under which Avala was already receiving compensation from BCBSLA for intraoperative monitoring services as part of a bundled payment.

Avala nevertheless has refused to compensate Assure for the IONM services provided to Avala's patients for which Avala has been receiving payment under its contract with BCBSLA. Had Assure known of the terms of the agreement between Avala and BCBSLA, and that Assure would not be able to bill or collect payment from BCBSLA for its services as a result of that agreement, Assure would not have entered into the Agreement with Avala. As a result of Avala's conduct, Assure has essentially

2

provided IONM services to Avala patients for free while Avala pockets Assure's rightful payment. Assure brings this suit against Avala to recover the payments it should have but did not receive for the IONM services it provided to Avala's patients.

**I.    PARTIES**

1. Plaintiff Assure Neuromonitoring Louisiana, LLC is a limited liability company organized under the laws of the State of Louisiana, but headquartered in Denver, Colorado. Assure Neuromonitoring, LLC is the sole member of Assure Neuromonitoring Louisiana, LLC, and Assure Holdings, Inc. is the sole member of Assure Neuromonitoring, LLC. Assure Holdings, Inc. is incorporated in Colorado and headquartered in Denver, Colorado.

2. Defendant Fairway Medical Center, LLC d/b/a Avala is a Louisiana limited liability company with its principal place of business in Covington, Louisiana. On information and belief, KSS Surgical, LLC is the sole member of Fairway Medical Center, LLC d/b/a Avala. On information and belief, Samer Shamieh, M.D., a Louisiana resident, is the sole member of KSS Surgical, LLC.

**II.   VENUE AND JURISDICTION**

3. This Court has jurisdiction to hear this case pursuant to 28 U.S.C. § 1332, as the amount in controversy is greater than $75,000 and there is complete diversity of citizenship between the parties.

4. Venue is proper in this District, as Defendant is located in and many of the events and injuries at issue occurred in Covington, Louisiana, which is located in this district.

### III.   ASSURE PROVIDES INTRAOPERATIVE NEUROMONITORING SERVICES

5.   Assure provides IONM services to patients at facilities in Colorado, Utah, Arizona, Texas, Michigan, Pennsylvania, South Carolina, and Louisiana. IONM is a highly specialized and important medical service ordered by surgeons when a patient undergoes a surgical procedure that could potentially affect the patient's peripheral or central nervous systems. IONM is used in a variety of procedures including spinal, otolaryngology, neurotology, vascular, neurosurgical, orthopedic, and spinal cord stimulator procedures.

6.   IONM services involve the work of technicians in the operating room and offsite professionals, who work with the surgical team to immediately identify and communicate if a particular nerve is affected during the procedure so the surgical team can take appropriate steps to avoid or mitigate nerve injury.

7.   The on-site component of IONM is commonly referred to as the Technical Component, and involves an on-site intraoperative neurophysiologist who sets up and operates the equipment that actively monitors the patient's nerve activity during the procedure. One hundred percent of Assure's intraoperative neurophysiologists who worked at Avala are CNIM certified by the ABRET Neurodiagnostic Credentialing and Accreditation. The second component involves an off-site professional who monitors the data gathered by the intraoperative neurophysiologist to identify any changes in brain, spinal cord, or peripheral nerve function to detect and prevent potential complications that could lead to irreversible nerve damage.

8. IONM services provide significant benefits to the patient and surgical team. IONM increases the quality of care by helping the surgeon steer clear of and maintain function of nerves. IONM decreases the length of stay in hospital by avoiding or diminishing post-operative complications. IONM positively influences value-based care by shortening hospital stays, decreasing medication requirements, and relieving patients and their family from long-term care requirements. The Journal of Anesthesiology and Clinical Pharmacology has stated that IONM "is the standard of care during many spinal, vascular, and intracranial surgeries."

9. The cost of providing IONM services is significant. For example, in addition to overhead, supply, and administration costs, Assure uses a state-of-the-art 32-channel Cadwell Cascade Pro IONM monitoring system, which is known as the industry leader in IONM equipment manufacturing and satisfaction. Each machine costs approximately $70,000. Assure pays each technition a yearly salary of at least $100,000. Assure also employs an in-house patient advocate team dedicated to the wellbeing of Assure's patients. The in-house patient advocate team acts as a resource to answer patients' questions about their pre-and post-surgery experience.

10. In the last 12 months, Assure has provided IONM services in Louisiana for approximately 2,200 cases for 27 different surgeon partners at 10 different facilities, including at Avala.

## IV. ASSURE AND AVALA NEGOTIATE AND ENTER INTO THE INTRAOPERATIVE MONITORING SERVICES AGREEMENT

11. Assure began negotiating a contract with Avala in 2018 to provide the Technical Component of IONM services to Avala patients.

12. During negotiations, the parties discussed the different payment sources for procedures and whether Avala or Assure would bill and collect from those payment sources. The parties discussed that Assure would have the right to bill and collect payment for patients with private insurance and Workers' Compensation, and Avala would bill and collect for services to patients with other funding sources. Avala represented that it did not bill or collect payment for IONM services for patients with private insurance. Avala also stated that BCBSLA was a difficult player to work with but did not state that IONM services were part of its contract with BCBSLA or that it would be billing and collecting payments for IONM services as part of a bundled fee. Assure did not have access to and never saw Avala's contracts with private insurers and therefore relied on Avala's representations about the terms of Avala's arrangements with private insurers and the availability of private insurance to pay for Assure's services.

13. In reliance on Avala's representations that it would not be billing or collecting for Assure's IONM services, Assure entered into the Agreement with Avala on December 1, 2018, because Avala "desire[d] to retain Assure on an independent contractor basis to provide the Technical Component Services to designated [Avala] patients." Agreement, at 1.

6

14. Pursuant to the Agreement, Assure would provide the Technical Component of IONM services at Avala's hospital for the benefit of Avala and its patients.

15. Assure's compensation under the Agreement depends on the type of insurance held by the patient receiving Assure's services. The Agreement specifies that for patients with private insurance or Workers' Compensation, defined as "Global Patients," Assure "shall have the exclusive right to bill and collect any fees from patients and third-party payors associated with the Technical Component Services rendered to Global Patients." Agreement §§ 1.7, 4.1. Avala has the exclusive right to bill and collect for all other patients and an obligation to pay Assure separately for those patients on a fixed fee basis. Avala has paid Assure for the IONM services provided to those patients.

## V. ASSURE LEARNS AVALA IS COLLECTING PAYMENT FROM BCBSLA FOR THE SERVICES ASSURE PROVIDED

16. After executing the Agreement, Assure began providing Avala patients with the Technical Component of IONM services. Shortly thereafter, Assure began having trouble collecting its fees from BCBSLA for IONM services Assure had provided to BCBSLA members at Avala, who are "Global Patients" within the meaning of the Agreement. BCBSLA personnel repeatedly told Assure that BCBSLA would not reimburse Assure for the Technical Component of IONM services because BCBSLA had already reimbursed Avala for those services.

17. BCBSLA's response was confusing to Assure because Assure has the "exclusive" right under its Agreement with Avala to "bill and collect any fees . . .

associated with the Technical Component Serices" provided to privately insured patients. After extensive discussions, BCBSLA informed Assure that BCBSLA pays Avala for the Technical Component of IONM services as part of a bundled payment for "Hospital Services," which includes a variety of services provided at the hospital during a patient's admission for procedures such as those for which Assure was providing IONM services.

18.     Assure shared this information from BCBSLA with Avala.  In late November 2020, Avala disclosed to Assure for the first time that Avala's contract with BCBSLA included a provision under which BCBSLA pays Avala a bundled fee for "Hospital Services."  As defined by Avala's contract with BCBSLA, "Hospital Services" "includes other diagnostic or therapeutic items or services, furnished by the hospital *or by others under arrangements with hospital*, as are ordinarily furnished to patients either by such hospital or by others under such arrangements including but not limited to services performed by an organization or facility (related or unrelated to MEMBER PROVIDER and whether or not performed at MEMBER PROVIDER) without consideration of ownership of equipment, to include technical services such as . . . *intraoperative monitoring*, etc. . . . ." (emphasis added).  In other words, IONM services are specifically identified as a Hospital Service covered and paid for under Avala's contract with BCBSLA. Avala never revealed this information to Assure prior to execution of the Agreement.

19.     Pursuant to the terms of its contract with BCBSLA, and according to BCBSLA's representations to Assure, Avala has been billing and receiving payment from

BCBSLA for Hospital Services, which include IONM services, despite the fact that Avala's Agreement with Assure grants Assure the exclusive right to do so.

## VI.   AVALA REFUSES TO PAY ASSURE FOR ITS SERVICES

20. Assure continued to discuss the problem with Avala while simultaneously trying to address the issue with BCBSLA.  During these communications, Avala admitted that its contract with BCBSLA was in effect when it negotiated the Agreement with Assure.  Avala's Chief Financial Officer also admitted in a February 5, 2021 email to Assure that Avala had failed to inform Assure that Avala would be receiving payment for the Technical Component pursuant to its contract with BCBSLA.

21. Assure continued to try to resolve the payment problems with BCBSLA and Avala.  By April 2021, BCBSLA was sending letters to Avala physicians threatening to reduce Avala's "Hospital Services" fee by 15% if they continued to refer IONM services to providers outside BCBSLA's network, as Assure was at that time.

22. Despite Avala's admissions and the fact that BCBSLA was paying Avala for the services Assure provided, Avala has refused to pay Assure for its service.

23. On June 2, 2021, Avala noticed its termination of the Agreement without cause pursuant to Section 6.3, and the Agreement terminated effective July 2, 2021.

### COUNT I
### (Breach of Contract)

24. Assure incorporates Paragraphs 1-23 herein by reference.

25. The Agreement between Avala and Assure is a valid and binding contract.

26. Pursuant to the Agreement, Avala agreed that Assure would have the "exclusive right to bill and collect any fees . . . associated with [Assure's] Technical Component Services" from patients with private insurance, which would include patients with BCBSLA insurance.

27. Avala billed BCBSLA for "Hospital Services," which covered the IONM Technical component, for patients who underwent procedures in which Assure provided IONM services.

28. Avala received and retained payment from BCBSLA that included payment for the IONM Technical Component provided by Assure.

29. Because Avala billed and collected fees for the IONM Technical Component provided by Assure to patients with private insurance, Avala materially breached Section 4.1 of the Agreement.

30. Assure has suffered significant damages greater than $75,000 as a result of Avala's material breach.

31. Assure is entitled to damages greater than $75,000.

## COUNT II
### (Negligent Misrepresentation)

32. Assure incorporates Paragraphs 1-31 herein by reference.

33. Avala provided Assure with false and misleading information during its negotiations of the Agreement with Assure. Specifically, Avala told Assure that it did not bill or collect payment for the Technical Component of IONM services for any patients under its contracts with private insurers, which includes patients insured by

BCBSLA, when in fact Avala's contract with BCBSLA that existed at the time of negotiations through today specifically identifies IONM services as a "Hospital Service," for which Avala would receive compensation. During negotiations, Avala told Assure that BCBSLA was a tough payer in the market but never stated or otherwise indicated that IONM services were included anywhere in Avala's contract with BCBSLA or that BCBSLA would pay Avala for IONM services.

34. Avala had a pecuniary interest in its misrepresentations or omissions because they were given in the course of its business negotiations.

35. As a contracting party, Avala had a legal duty to provide correct information to Assure, and Avala breached that duty by affirmatively providing incorrect information and by failing to provide correct information to Assure.

36. As a result of Avala's misrepresentations, Assure been damaged in an amount greater than $75,000.

## COUNT III
### (Mutual Mistake)

37. Assure incorporates Paragraphs 1-36 herein by reference.

38. Assure and Avala entered into the Agreement with the understanding that Assure would have the exclusive right to bill private insurers for the technical portion of IONM services.

39. Assure was not aware that Avala had a contract with BCBSLA that incorporated IONM services into the bundled payments BCBSLA paid Avala for

11

"Hospital Services," and on information and belief, Avala was also unaware that it had such a contract.

40. Had the parties been aware of the language in Avala's BCBSLA contract, they would not have entered into the Agreement.

41. Assure and Avala made a mutual mistake with respect to the Agreement.

42. This mutual mistake is excusable. Assure had no way of knowing the contents of Avala's BCBSLA contract. Avala should have known about the contract provision, but it is excusable under the doctrine of mistake.

43. Because the Agreement was entered into based on mutual mistake with respect to Avala's contracts with private insurers, including BCBSLA, Assure is entitled to rescind the Agreement.

## COUNT IV
### (Unilateral Mistake – Article 1949 Louisiana Civil Code)

44. Assure incorporates Paragraphs 1-43 herein by reference.

45. Assure entered into the Agreement with Avala with the understanding that Assure would have the exclusive right to bill private insurers for the technical portion of IONM services.

46. Assure was not aware that Avala had a contract with BCBSLA that incorporated IONM services into the bundled payments BCBSLA paid Avala for "Hospital Services" and had no way of knowing that Avala had such a contract. Assure is not a party to the contract between Avala and BCBSLA and therefore had no basis to request to see the contract itself. Moreover, Avala addressed BCBSLA as a payor

12

specifically but did not state that IONM services were covered in its contract with BCBSLA or that it would be billing and receiving payment for IONM services provided to BCBSLA patients.

47. Had Assure been aware of the language in Avala's BCBSLA contract, it would not have entered into the Agreement.

48. Avala knew or should have known that Assure's ability to have the exclusive right to bill and collect payment for the Technical portion of IONM services was the reason Assure entered into the Agreement because it is a central, material term to the Agreement.

49. Assure made a mistake with respect to the Agreement. Assure's mistake is excusable. Assure had no way of knowing the contents of Avala's BCBSLA contract.

50. Because the Agreement was entered into based on a mistake, Assure is entitled to rescind the Agreement.

## COUNT V
### (Unjust Enrichment – Article 2298 Louisiana Civil Code)

51. Assure incorporates Paragraphs 1- 50 herein by reference.

52. Assure provided IONM Technical Component services to Avala's patients insured by BCBSLA.

53. Avala billed and collected payment from BCBSLA that included the value of Assure's IONM services.

54. Avala has kept the payment from BCBSLA that includes payment for the IONM Technical Component services provided by Assure without cause.

55. Avala has therefore been unfairly enriched at Assure's expense.

56. Assure has been damaged in an amount greater than $75,000 as a result of Avala's conduct.

## COUNT VI
### (Detrimental Reliance – Article 1967 Louisiana Civil Code)

57. Assure incorporates Paragraphs 1-56 herein by reference.

58. Avala represented to Assure that Assure would be the party to bill and collect for Assure's IONM services for patients with private insurance.

59. In reliance on Avala's representation that Assure would be the party to bill and collect for Assure's IONM services for patients with private insurance, Assure entered into the Agreement with Avala and provided the Technical Component of IONM services at Avala's hospital for the benefit of Avala and its patients.

60. To date, Assure has been unable to collect for its provided services because contrary to Avala's representations, Avala has billed and collected for Assure's Technical Component of IONM services.

61. As a result of Avala's representation and Assure's justifiable reliance on that representation, Assure changed its position to its detriment and has been damaged in an amount greater than $75,000.

## COUNT VII
### (Interest)

62. Assure incorporates Paragraphs 1-61 herein by reference.

63. Assure is entitled to recover interest on its claims against Avala from the date the payments were first due under La. Civil Code Article 2000.

## DEMAND FOR JURY TRIAL

64. Assure demands trial by jury on all issues so triable.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully seeks judgment:

1. In favor of Assure in an amount to be determined at trial, but in excess of $75,000.00;

2. Awarding Assure attorneys' fees, costs, prejudgment and post-judgment interest, and disbursements to the extent permitted by law;

3. Awarding Assure such other relief as this Court deems just and equitable.

Dated:  August 6, 2021

Respectfully submitted,

/s/ Michael F. Weiner
        MICHAEL F. WEINER (#23359)
**Michael F. Weiner, Attorney at Law, LLC**
527 E. Boston St., Suite 201
Covington, LA 70433
Telephone: (985) 875-7710
Facsimile: (985) 259-8816
Email: mweiner@mfweiner.com

*Attorney for Plaintiff Assure Neuromonitoring, LLC*